Good morning, your honors. I'm Andrew Rosenfeld. I am counsel for Appellant Synergy Staffing, Inc. I was counsel for them as plaintiff below. Your honors, the evidence code does not specify what evidence will give rise to the inference that will prove the point. And the fact is that in this case, whether the government likes it or not, we have proffered competent admissible evidence that does not require the drawing of improper inferences in order to establish a prima facie case by a preponderance of the evidence as to the fact of the overpayment and the amount of the refund due. The issue in this case essentially boils down to whether there is sufficient evidence for the plaintiff and appellant because the government has no Your honors, the government argues that our experts have simply drawn conclusions based on the evidence and interpreted the evidence. And that is not correct. Their declarations are evidence. The government suggests that you could draw different conclusions from this material. But in order to do that, they have to assert something they can't prove. For example, we could have been employing illegal aliens. There isn't any evidence of that. Let me ask you this. Yes, sir. This problem comes to your attention, I think, in the year 2000. I believe that is correct, Your Honor. And the problem is for the tax year 1997. Yes, Your Honor. And at that time, your client no longer had any payable records from 1997? Yes, Your Honor. And the explanation for that is so good that the government has never pressed the point. If the Court would like me to elaborate on that, please. Yes, I'd like to know. Go ahead. Yes, sir. The fact is, Your Honor, that it's been established early on in this case that through the course of mergers and transactions that occurred with respect to the assets of this business, the records have been thoroughly searched for in many different places. I myself have been involved in that search, and we simply do not know where they are. Well, what's so good about that as an explanation, number one? And number two, it's irrelevant. The fact remains you don't have the records. Well, Your Honor, it's not – what is relevant in my mind is that the government has accepted the explanation. They've never – Accepted the explanation that there are no records. They've never asserted that because the specific records aren't in existence, we can't prove our case. What they've asserted is that the evidence that we have proffered, Your Honor, is insufficient. And the fact is that we – well, I hesitate to use the word innocent with respect to the lack of records, but we do not have the records. The fact that we do not have the records does not automatically preclude us from being able to prove our case. And that is essentially what the government is asserting, because the W-2s in this case are competent, admissible evidence that the government has relied on for various things, for instance, to threaten to levy penalties. The W-2s are competent, admissible evidence of the is also supported by other evidence that we've pointed out. Now, the government will assert, well, you shouldn't be able to rely on your corporate tax returns. Well, as a general proposition, that may be true in some cases. But in this case, we've established prima facie that those tax returns, A, were prepared before any of these issues were ever known to us, and that, B, because of all the different ways that they match up to the W-2s and the other documents prepared, they clearly are correct in terms of what we're asserting. Again, we don't have the evidence we wish we would have. Obviously, we wish we would have the books and records, Your Honor. Roberts. You don't have the evidence, and you also have the burden here. Judge Stotler says, Using one set of wages to rebut the other is essentially a contradiction. At best, it demonstrates an error or discrepancy, but it does not, absent other evidence, demonstrate that one reported figure is accurate while the other is not. I mean, all you're able to show is a discrepancy. But in my view, you're not able to show which of the two figures, assume that you're dealing with two, is correct. It's just a discrepancy. I believe we can, Your Honor. And I believe that we have. Because if the Court looks first at the W-2s, the W-2s filed themselves are prima facie evidence of the payroll we paid. Your Honor, we took discovery. We investigated. And we have not been able, and the government has not been able to point to, and any single shred of anything that would suggest that those W-2s are not a complete and accurate record of the wages we paid. And the fact is that the other evidence supports that independently of those W-2s. And so we are not taking one figure over another, Your Honor. We are taking the evidence and going where it leads. The government wishes it led somewhere else, but every time they try to go there, a needed fact arises that they can't prove. We closed the loop on this thing. It is not circular. The W-2s established the amount of the wages. If there had been W-2s missing, we've proven in this case, there would be red flags because of that, because of the nature of the employees and the number of them involved. But your own report suggests that the W-2s are wrong. The only report that suggests that, Your Honor, is the 941 that we filed. Exactly. Who filed that? We filed that. And you filed that under what? Penalty of perjury? Of course. Claiming this is the true figure. The person that signed it believed it to be accurate. Okay. So you've got a 941 file that says this is it. Now you're saying it's really the W-2s. And as Judge Zottler points out, you don't have any underlying records, so we don't know. And this is a peculiar case. You've got the burden. Tax is different. And so you don't make it. Your Honor, there is all kinds of evidence that the 941 we initially filed was incorrect. There is no evidence that the W-2s and the 1120s, which are the corporate tax returns, which support all of this and which, again, were prepared before any of this came up, that all of the evidence points by better than a preponderance to what we're trying to prove, Your Honor, and none of it points to the contrary. And that is why, under the rules of evidence, we have made a prima facie case. Can I ask you something? One of the things you were arguing is that this quarter was out of line with the other quarter, three quarters before it. Did you do some kind of historical study of over many years to show that this was an aberrant amount? Thank you, Your Honor. Obviously, many years is a little bit ‑‑ I can't say exactly, but Mr. Blumenfeld did an analysis going back at least a few years. And he looked at this. And by the way, Your Honor ‑‑ And what did he say? Did he say that there was never a quarter like this? This quarter was double every other quarter? Never a quarter like that, Your Honor. And compared to three years of ‑‑ I would say at least three years, Your Honor. I did this analysis in his office with him several years ago, but at least three years, Your Honor. And the other thing about that, Your Honor, with Mr. Blumenfeld's analysis is that had these ways ‑‑ had these monies been applied in a different quarter, as Mr. Blumenfeld points out, we'd have negative numbers for some quarters for wages paid. Another independent piece of evidence that supports our position. If it please the Court at this time, I would reserve the balance of my time for rebuttal. Thank you, Your Honors. I will hear from the government, and I will hear from General Butler. May it please the Court. My name is Karen Utiger, and I represent the government in this case. Could you speak up, please? Yes. There was a discrepancy in this case. Synergy filed its 941 employment tax return, reporting that it had $14 million in wages paid for the fourth quarter of 1997. When did they report that? This would be in 1998, the beginning of 1998, Your Honor. Were the records missing then? We don't know, Your Honor. The first time that we contacted the taxpayers was in the year 2000, as you've noted. And at that time, they claimed that there were no records. And so on what do they file the $14 million figure if they don't have any records then? I don't know, Your Honor. I would think that their accountants would have these records. It would seem that they would never have anything. It seems that they had to have something, or they couldn't have just made it up out of thin air. Where would you ordinarily look to to come up with that figure? Ordinarily, you keep wage figures for your employees. You would need those for all kinds of purposes, not just your taxpayers. And those are now missing. That's what we have been informed, Your Honor. However, the W-2s it issued indicated that it had $7 million less in wages. Now, this betrays my ignorance, but I'm quite cheerful in doing so repeatedly in various contexts. What advantage or disadvantage is there to the taxpayer to report a high number on the 941? That is to say, is there some advantage to reporting a high number on a 941 and a lower number if you add up the W-2s? Well, Your Honor, ordinarily you get to deduct your wages. So I guess inflating your wage figure would intend to create a deduction. However, in this case, I'm not sure that that did, in fact, happen. Usually it's not to your benefit to report a higher wages that you've paid because you will owe employment taxes on those. However, it may be that the amount of your W-2s and the amount of your employment tax returns don't match because you haven't properly been issuing your W-2s. That is a possibility. And of course, it's always possible, although I can't point to any evidence in this case, that it may simply not be to your advantage to present your records. You may not, for whatever reason, want your records to be reviewed. I don't want to emphasize what I think is already stated by you. You're merely stating possibilities. You just don't know. We don't know, Your Honor. But the point is that the taxpayer in this case, Synergy, hasn't presented any evidence, any real evidence, showing that the lower figures were correct. Is it true that he presented evidence that over for three years that showed no quarter like this quarter? I believe he referred to Mr. Blumenfeld as the person who had performed that analysis. If you'll look at, in his appendix, Exhibit 9, that is the Blumenfeld declaration. There's no reference in there to some sort of multi-year analysis in this case. None of this is in the record. What Mr. Blumenfeld did say... Just to be clear, there's nothing in the record beyond that affidavit from Mr. Blumenfeld that actually tells us what the figures were for those other quarters? No. We know what the figures were for the other quarters within the year. No, I understand. But other quarters and other years. I understand the point that we've got enough to talk about the last quarter of 1997, but do we have any evidence in the record as to what the actual numbers were in other tax years? In other tax years, no, I don't believe. Not in the record in this case, no. And, of course, it's the last year. It's the last quarter of the year. That's the year in which the holidays occur. This would be a period in which you might expect. There to be an increase in temporary employment. It's also possible they operated several offices. It's possible they opened a new office. There are many possibilities here. The point is that no evidence was presented to show which of those possibilities actually occurred. You're required to keep your records. Section 6001 of the Internal Revenue Code provides that you must keep records. In this case, they simply didn't keep their records and they can't substantiate what they claim. I don't know much about business taxes. Obviously, you've got to keep them for three years. How long are businesses supposed to keep them? Usually, Your Honor, for tax purposes, you would keep them for six years, I believe. That's the standard period of time. But you may need to keep them in certain circumstances for longer periods because, for example, if you're going to file a refund claim, the date that the claim has to be filed is tied to the date that you finally pay off the amount of tax. But at least six years. Of course, businesses not only keep these records usually for purposes of taxes, but as well for purposes of employment, pension purposes, many different purposes. Yet here they disappeared. I'd also like to point out the explanation offered this morning that there were many mergers also is not contained in the record in this case. There's nothing to substantiate that. Now, Synergy also presented the declaration of Mark Roseman. He indicated that because the W-2s appeared to be right for other periods, they must be right here. But the Forms 941 appeared to be right for other periods as well. He also reasoned that there was an exact match with the W-2s in the IRS records. Well, of course there was. Because the only way that the IRS gets wage information is from the taxpayer itself, and that is what the taxpayer provided. Finally, Synergy indicates that no one complained about a missing W-2. He bases that on the statement of an IRS examiner who indicated that she was not aware of any complaints. But this doesn't mean that there weren't any. And also, it doesn't mean that the temporary employees were not just as happy not to report the income. The point is there's no way to tell because no evidence was presented in this case. Mr. Bloomingfield and Mr. Rosenberg essentially said in their declarations that it was more likely than not that the lower W-2 figure was correct. Well, that's really a decision for the Court. The Court was fully entitled to look at their declarations and see what the evidence they based that on was. What they had here was two different pieces of information, both from Synergy themselves, the W-2s, the Form 941s. There's nothing that they presented here to show which one of those is correct. It's the taxpayer's own report that supports the IRS's assessment. It is. They claim also there's nothing that supports the IRS's assessment except their own statement. Your Honor, what would the IRS have? The taxpayer has to supply the wage information. How else would the IRS get the wage information? We can't have that burden of proof. We don't have that burden of proof. The Synergy that bears the burden of proof is showing that the $14 million in wages it reported was not correct. It bears the burden of showing the amount of refund it is entitled to. It bears the burden of showing the amount that the tax assessment is correct. In fact, Synergy bears the burden of showing the correct amount of tax assessment for the last quarter of 1997, but it didn't present the evidence it needed to show that correct assessment. Its figures don't match. Obviously, they are unreliable. It didn't present anything else. Its declarations don't prove what they say that it did prove. All Synergy would have had to do in this case to prove its case was present the ordinary books and records that any business maintains, especially a large business like this. This was not a mom-and-pop business. This was a business that was reporting several million dollars in wages each quarter. If Synergy didn't present the records it needed to prove that it was entitled to a refund, it has only itself to blame. As this Court had noted in the Morosis v. Smith case, if taxpayers' books are insufficient, they have to suffer the consequences. The district court correctly recognized that and correctly held in favor of the government. Thank you, Your Honors. Roberts. Roberts. Thank you. Mr. Rosenfeld, I think you've saved about two minutes. Yes, Your Honor. Thank you. I have a question. The problem here is the number that's reported in the 941 form, is that right? Yes, sir. Okay. Where in the record does it tell me who prepared the figures that went into the 941 and how they were prepared? I don't believe the actual details of preparation are in the record. Yeah. That's kind of strange to me. I mean, it would seem to me that if you're out to prove that your 941 is wrong, that you'd have the people who prepared the 941, who came up with that figure you now say is overinflated, come in and say, here's how we made the mistake. And there's nothing like that in the record, is there? There is nothing like that in the record. All we have from your company is a statement under oath that this is the figure, 32 million. And now you're trying to undercut it with no records and no testimony from anybody who explains how the $32 million figure was made was a mistake. No testimony from anyone doing that. Why is that? I mean, isn't that pretty obvious? You're claiming the $32 million figure was a mistake. Somebody made it. Somebody in your company, your company made it, right? Doesn't it seem pretty logical that you'd come forward with those people who computed those numbers, who says, now that we look at it, here's the mistake that we made? Certainly, Your Honor. Why isn't it there? Because I don't know who prepared it, Your Honor. And I've never been able to determine who prepared it. Of course I would know. Are there any signatures on the documents? There are signatures on the documents, but they're not by the people who actually prepared it. So now you not only have no documents, you can't even tell us who came up with the wrong figure. Well, Your Honor, I know that it was whoever was doing the books for the company at the time. Who was that? I don't know the person. Why don't you know? Because I've never been able to determine it. Because there are no records. Exactly. See, that's your problem. Well, Your Honor, that's where I disagree, if I may. Because, again, if the 1120s, the corporate tax returns, are prepared and have different figures than the 941s, that suggests there's a mistake in the 941s when the 1120s match the W-2s. The government... Suggesting is not enough in this context. More probable than not doesn't get you anywhere with these hybrids. I believe it established it is more probable than not. To respond to the other Justice's question, the Blumenfeld Declaration, Your Honor, in Appellant Synergy Staffing Insect Service of Record, Exhibit 9, Page 3, he talks about all of the years, 94, 95, 96, 97, and 98, that he reviewed. And so I was relying on something that is in the record, Your Honor. But the underlying records that he reviewed, you did not place on the record? The transcript, the W-2 transcripts are in the record. The 1120s are in the record. All of the material that he reviewed, other than perhaps the 941s for the quarters not at issue, are in the record, Your Honor. Okay. Thank you very much. Thank you, Your Honors. The case of Synergy Staffing v. U.S. Internal Revenue Service, number 03-55968, is now submitted for decision.
judges: Trott, W. Fletcher, Restani